UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| JUNHYUK PARK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 4:09-CV-87 JVB |
| | ) | |
| THE TRUSTEES OF PURDUE | ) | |
| UNIVERSITY, and MARK CAMPBELL | ) | |
| TILTON in his individual capacity, | ) | |
| DANIEL P. ALDRICH in his individual | ) | |
| capacity, BERT ROCKMAN in his | ) | |
| individual capacity, and KEITH L. | ) | |
| SHIMKO in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

In the fall of 2006, Junhyuk Park began his studies in the Political Science Ph.D. Program at Purdue University. Students in the program are required to write a final paper that is personally reviewed by select Purdue University professors. Park wrote the required paper and his professors gave him positive comments on the first few drafts. But one professor submitted Park's final paper to a plagiarism-checking computer program—a process that deviated from the typical paper review procedure. The computer program uncovered plagiarism and Park's paper was rejected. He was later dismissed from the Ph.D. Program.

When Park first learned that he was being investigated for plagiarism, Park began some investigating of his own. He allegedly discovered that other similarly situated students whose papers contained more plagiarism than his paper were not disciplined. Park believes he was treated differently because of his race, national origin, sex, and/or sexual orientation.

On August 30, 2010, Park sued the Trustees of Purdue University (Purdue) for violations of Title VI of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972. Additionally, Park sued Defendants Mark C. Tilton, Daniel P. Aldrich, Bert Rockman, and Keith L. Shimko in their individual capacities for violations of Park's Fourteenth Amendment equal protection as well as substantive and procedural due process rights under the Civil Rights Act of 1971, 42 U.S.C. § 1983. On September 1, 2010, Defendants filed a Motion to Dismiss Counts III and IV of Plaintiff's Amended Complaint. (DE 39) For the following reasons, Defendants' partial motion to dismiss is GRANTED in part and DENIED in part.

A.   **Standard for Evaluating a Motion to Dismiss**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim is to test the sufficiency of the pleading, not to decide the merits of the case. *See Gibson v. Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However, "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).[1] As the Supreme Court has stated, "the tenant that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 1940 (quoting *Twombly*, 550 U.S. at 570).

---

[1]   In *Twombly* the Supreme Court "retooled federal pleading standards, retiring the oft-quoted [*Conley v. Gibson*, 355 U.S. 42, 47 (1957)] formulation that a pleading 'should not be dismissed for failure to state a claim unless it appears beyond doubt that the [pleader] can prove no set of facts in support of his claim which would entitle him to relief.'" *Killingsworth v HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618, (7th Cir. 2007).

A complaint is facially plausible if a court can reasonably infer from factual content in the pleading that the defendant is liable for the alleged wrongdoing. *Id*. (citing *Twombly*, 550 U.S. at 570). The Seventh Circuit has synthesized the standard into three requirements. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). "First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.*

## B. Factual Background and Procedural History

Plaintiff began his studies in the Ph.D. Program at Purdue University in 2006. (DE 36, Am. Compl. ¶ 15.) He was majoring in international relations and pursuing two minors, including one in comparative politics. (*Id*. ¶ 17.) Plaintiff wrote a paper to fulfill a requirement for his minor, which he submitted to Mark Tilton, a professor who specializes in comparative politics. (*Id*. ¶¶ 16–17.) Tilton reviewed drafts of the paper on January 28, 2009, and again on February 25, 2009. (*Id*. ¶ 16.) After each review, Tilton told Plaintiff that he had "no additional comments." (*Id*.) Other professors also reviewed the paper. (*Id*. ¶¶20–23.) Keith Shimko reviewed it once and Daniel Aldrich reviewed it four times; neither raised concerns about plagiarism. (*Id*. ¶¶ 20–21.)

The normal practice in the Ph.D. Program was that professors personally reviewed papers for plagiarism before the student submitted his final paper. (*Id*. ¶ 19.) Occasionally, a professor would submit a draft of the paper to a plagiarism-checking computer program. (*Id*. ¶ 28.) Final

3

papers, however, were not typically run through the program. (*Id.* ¶ 27.) Plaintiff's paper received the opposite treatment. Tilton submitted the final paper to the plagiarism-checking program, but not the earlier drafts. (*Id.* ¶¶ 26, 29; DE 44, Resp. Br. at 2.)

After running the paper through the program, Tilton determined that the paper contained plagiarism and rejected the paper. (DE 36, Am. Compl. ¶¶19–22, 24.) In response, Plaintiff provided Defendants with evidence that Tilton arbitrarily applied a more stringent standard of plagiarism review than the standard applied to similarly situated non-Korean, non-Asian, or female students in the Ph.D. Program. (*Id.* ¶ 25.) For example, "Plaintiff provided Defendants with evidence that female students in the Ph.D. degree program submitted papers that reflected a greater amount of alleged plagiarism than reflected on [Plaintiff]'s paper, but such students were not disciplined or expelled." (*Id.* ¶ 31.)

This evidence did not change the Defendants' minds. Aldrich supported the rejection in light of Tilton's report even though Aldrich had reviewed the paper multiple times and never mentioned concerns about plagiarism. (*Id.* ¶ 20.) Similarly, Shimko allegedly told Plaintiff that he did not believe Plaintiff committed plagiarism, but he had no authority to have Plaintiff's expulsion overturned. (*Id.* ¶ 21.)

Plaintiff appealed the rejection of the paper to Bert Rockman, the Director of the Department of Political Science. (*Id.* ¶ 22; *see also* Br. in Supp. of Mot. to Dismiss at 2 (stating that this was the typical procedure for the review of an academic decision)). According to Plaintiff, even though Rockman "saw that [Plaintiff] did not engage in plagiarism that exceeded the amount of plagiarism allowed similarly-situated non-South Korean, non-Asian or female students," Rockman upheld the Department's determination of plagiarism. (DE 36, Am. Compl. ¶ 22.)

4

After Plaintiff was expelled, he reported to Rockman that "non-Asian/American students, a male and female, in the PhD Degree Program had submitted papers that reflected a greater or similar amount of alleged plagiarism that was reflected on [Plaintiff]'s paper." (*Id.* ¶ 37.) Rockman refused to reconsider Plaintiff's expulsion, and the two students whose papers allegedly reflected greater plagiarism were not disciplined or expelled. (*Id.*)

Plaintiff contends that Tilton intentionally subjected Plaintiff's paper to a rigorous review procedure and a heightened standard for assessing plagiarism because Plaintiff's sexual orientation was different than Tilton's. (*Id.* ¶ 33.) Plaintiff also alleges that Tilton had a negative attitude toward him because Plaintiff is a Major in the South Korean Army and a Korean Asian. (*Id.* ¶¶ 33–34.) In support of his assertions, Plaintiff states that Tilton told Plaintiff's wife and seven-year-old daughter, "Your husband is immoral and dishonest," and stated three times, "Go back to Korea right now!," which illustrates Tilton's prejudice toward Korean Asians. (*Id.* ¶ 34.) Plaintiff reported Tilton's comments to Rockman but no action was taken. (*Id.* ¶ 37.)

Plaintiff asserts that throughout this situation, Aldrich, Shimko, and Rockman were deliberately indifferent to his rights. (*Id.* ¶ 60.) They allegedly knew that Plaintiff was treated differently than non-Asian, non-Korean, or female students in the same Ph.D. Program but they did nothing to stop it. (*Id.* ¶ 38.) Tilton allegedly used Plaintiff's plagiarism as pretext for rejecting Plaintiff's paper, and Shimko, Aldrich, and Rockman knowingly supported this action. (*Id.* ¶ 42.) Furthermore, Plaintiff claims that the Defendants failed to enforce Purdue's anti-discrimination and harassment policies[1] and Indiana's Civil Rights Law.[2] (*Id.* ¶¶ 40–41.)

---

[1] Plaintiff cites Purdue's Nondiscriminatory Policy Statement, which prohibits discrimination on the basis of race, sex, and sexual orientation. (*Id.* ¶ 40.) Plaintiff also cites Purdue's Bill of Student Rights, which provides that "[t]he student's course grade shall be based upon academic performance, and not upon opinions or conduct in matters unrelated to academic standards." (*Id.*)

[2] Plaintiff cites Indiana Code section 22-9-1-2-1, which provides that race-, national origin-, and sex-based discrimination in education is contrary to Indiana's public policy. (*Id.* ¶ 41.)

On August 30, 2010, Plaintiff sued Tilton, Aldrich, Rockman, and Shimko in their individual capacities for violating his Fourteenth Amendment equal protection, and substantive and procedural due process rights. (*Id.* at Cts. III & IV.) He also sued Purdue for violating Title VI of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972. (DE 36, Am. Compl. at Cts. I & II.) Plaintiff seeks a declaratory judgment that Defendants' actions violated his substantive due process and equal protection rights. (*Id.* at Ct. IV.) He also seeks reinstatement into the Ph.D. Program. (*Id.*) On September 1, 2010, Defendants moved to dismiss the claims against Tilton, Aldrich, Rockman, and Shimko.[3] (DE 39, Mot to Dismiss Cts. III & IV.)

**C.    Discussion**

Defendants move to dismiss Counts III and IV of Plaintiff's Complaint. First, they argue that this is actually a suit against the state; thus, claims for monetary damages are barred by the Eleventh Amendment. (DE 40, Mem. of P. & A. in Supp. of Partial Mot. to Dismiss at 5.) Next, they assert that insofar as this is a suit against the Defendants individually, the Defendants have qualified immunity. (*Id.* at 8.) Furthermore, Defendants assert that Plaintiff fails to state a claim under § 1983 for violations of equal protection, substantive due process, and procedural due process. (*Id.* at 11–22.)

**(1)    *Eleventh Amendment***

---

[3]    This Order uses the term "Defendants" to refer to Tilton, Aldrich, Rockman, and Shimko. Defendants did not move to dismiss the claims against Purdue.

Counts III and IV of Plaintiff's Amended Complaint name Tilton, Aldrich, Rockman, and Shimko in their individual capacities. (DE 36, Am. Compl. at Cts. III & IV.) Defendants, however, contend that the claims are actually against them in their official capacities; thus, Defendants cannot be liable for money damages. (*See* DE 40, Mem. of P. & A. in Supp. of Partial Mot. to Dismiss at 7–8.)

A suit against a government official in his individual capacity "seek[s] to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 237–38 (1974)). The focus of an individual capacity suit is on "the constitutional torts of an individual official." *Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991). A government official is personally liable when the plaintiff demonstrates "that the official, acting under color of state law, caused the deprivation of a federal right." *Graham*, 473 U.S. at 166 (citing *Monroe v. Pape*, 365 U.S. 167 (1961)).

In contrast, a suit against a government official in his official capacity is essentially "another way of pleading an action against an entity of which an officer is an agent." *Id*. at 165–66 (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). In an official capacity suit, the focus is on "the execution or implementation of official policy or conduct by a government because the real party in interest is the entity." *Hill*, 924 F.2d at 1372. The plaintiff must prove that "the entity itself is a 'moving force' behind the deprivation." *Graham*, 473 U.S. at 166 (citing *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (quoting *Monell*, 436 U.S. at 694 (1978))).

The Amended Complaint and Plaintiff's briefs explicitly state that Defendants are being sued in their individual capacity. (*See* DE 36, Am. Compl.; DE 44, Resp. Br. at 8.) Nevertheless,

Defendants argue that the Court must look beyond Plaintiff's label of "individual capacity" and determine whether the Defendants are actually being sued in their official capacity. (DE 44, Mem. of P. & A. in Supp. of Partial Mot. to Dismiss at 7.)

Defendants compare the present case to *Turpin v. Koropchak*, 567 F.3d 880 (7th Cir. 2009). Turpin, a former Ph.D. student of Southern Illinois University, sued two deans and a professor in federal court—in their individual capacities—for breach of duty and tortious interference with a business expectancy because they refused to acknowledge she earned her degree. *Id*. at 881–82. The district court dismissed the suit for lack of subject matter jurisdiction. *Id*. at 881. It found that Illinois "was the real party in interest," so the Eleventh Amendment barred the suit in federal court. *Id*. at 881 & 883 n.4. Although Illinois waived its sovereign immunity for certain claims, including those like Turpin's, the state only waived its immunity for cases before the Illinois Court of Claims. *Id*. at 882. Turpin appealed. *Id*. at 881.

The Court of Appeals for the Seventh Circuit held that Illinois was the real party in interest and affirmed the district court. *Id*. at 882. In deciding whether the suit was actually against Illinois, the court assessed whether "an alleged act of misconduct arose out of the State employee's breach of a duty that is imposed on him *solely* by virtue of his State employment." *Id*. at 882–83 (citing *Turner v. Miller*, 301 F.3d 599, 602 (7th Cir. 2002)) (internal quotations omitted). The court noted that the duties allegedly breached were "to process degrees and report graduate status accurately" and "to be truthful and fair in Ph.D. evaluations." *Id*. at 883. This duty, "to determine whether Turpin earned her degree," was imposed on the defendants "only because of where they worked"; thus, the suit was against the state and the district court lacked subject matter jurisdiction. *Id*.

In contrast, Plaintiff seeks to hold Defendants liable for their individual, intentional acts of discrimination that violate the U.S. Constitution. (DE 36, Am. Compl. at Cts. III & IV.) Although Defendants were acting under color of state law, it is alleged they acted beyond the bounds of their authority. (*Id*. ¶¶ 40–41.) Plaintiff contends that Tilton made discriminatory comments to his family, subjected him to a heightened standard of plagiarism review, and wrote a report in an effort to expel him from the Ph.D. Program because of his race, national origin, sex, or sexual orientation. (*Id*. ¶¶ 19, 26, 33–34.) If this is true, Tilton acted outside the scope of his authority and contrary to state law and school policy. Consequently, Defendants have appropriately been named in their individual capacity and this is not an official capacity suit. The Eleventh Amendment does not bar these claims.

**(2)** *Qualified Immunity*

Even if the Defendants are properly sued in their individual capacities, Defendants still contend that they are immune from suit for money damages because they have qualified immunity. (DE 40, Mem. of P. & A. in Supp. of Partial Mot. to Dismiss at 8.) Qualified immunity protects public officials from civil suit for damages on the basis of their discretionary functions "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 352 (7th Cir. 2005). To determine whether qualified immunity applies, the court asks two questions: "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Purvis v. Oest*, 614 F.3d 713, 720 (7th Cir. 2010) (citing

*Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008)). The Court answers these questions in turn.

(a)     *Plaintiff Alleged Violation of His Right to Equal Protection*

Count III of Plaintiff's Amended Complaint alleges that Defendants deprived Plaintiff of Equal Protection under the Fourteenth Amendment of the United States Constitution. (DE 36, Am. Compl. at Ct. III.) The Fourteenth Amendment states that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. In essence, this requires that "all persons similarly situated should be treated alike." *City of Cleyburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).

A plaintiff can establish an equal protection violation by demonstrating that defendant's actions had a discriminatory effect and defendant acted with discriminatory intent. *Chavez v. Ill. State Police*, 251 F.3d 612, 635–36 (7th Cir. 2001); *see also Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 (1977) (requiring a showing of "discriminatory intent or purpose"). To prove discriminatory effect, a plaintiff must assert that he is a "member[] of a protected class, that [he is] otherwise similarly situated to members of the unprotected class, and that [he] was treated differently from members of the unprotected class." *Chavez*, 251 F.3d at 636 (citing *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000); *Johnson v. City of Fort Wayne*, 91 F.3d 992, 944–45 (7th Cir. 1996)). Evidence of discriminatory intent may include racial remarks or deviations from established practices or procedures. *See Arlington Heights*, 429 U.S. at 267 (explaining that deviation from established practices may evince discriminatory intent); *Chavez*, 251 F.3d at 646 (7th Cir. 2001) (citing *DeWalt v. Carter*, 224 F.3d 607, 612 n.3 (7th Cir.

2000) (noting that racial remarks can evince discriminatory intent)). Notably, discriminatory animus does not need to be the sole motivation for the challenged action. *Arlington Heights*, 429 U.S. at 265.

For purposes of this motion, Defendants concede that Plaintiff is a member of a protected class but contend that Plaintiff's equal protection claim fails for two reasons. (DE 40, Mem. of P. & A. in Supp. of Partial Mot. to Dismiss at 14.) First, they assert that Plaintiff failed to offer sufficient evidence that he was treated differently from members of the unprotected class. More specifically, Defendants allege that Plaintiff fails to compare the treatment he received to that of other students whose papers were reviewed by the Defendants or who were in the same Ph.D. Program as Plaintiff. (*Id.* at 15.) Second, Defendants argue that Plaintiff has not alleged that Aldrich, Rockman, or Shimko acted with discriminatory intent or harbored discriminatory animus. (*Id.* at 15 n.7.)

The Court finds that Plaintiff sufficiently asserted that similarly situated female, non-Asian, or non-South Korean students in the Political Science Ph.D. Program engaged in plagiarism without repercussion. Plaintiff uses the term "PhD Degree Program" throughout his complaint, which is defined in paragraph fourteen as "Purdue's Political Science PhD Degree Program." (DE 36, Am. Compl. ¶ 14.) Thus, contrary to Defendants' assertion, Plaintiff has alleged that similarly situated students in his Ph.D. Program were treated differently. Additionally, when determining whether a plaintiff is "similarly situated" to others, the Seventh Circuit "has been careful not to define the requirement too narrowly." *Chavez v. Ill. State Police*, 251 F.3d 612, 636 (7th Cir. 2001). The similarly situated inquiry is meant to be a "common-sense inquiry" and not "a complicated legal one." *Id.* Plaintiff's allegations are sufficient to withstand the motion to dismiss.

The Court also rejects Defendants' second argument, which asserts that Plaintiff failed to allege the Defendants acted with discriminatory intent. (DE 40, Mem. of P. & A. in Supp. of Partial Mot. to Dismiss at 15 n.7.) Plaintiff has alleged facts that are illustrative of discriminatory intent. According to Plaintiff, Tilton expressed distaste for Koreans and Asians by making racial remarks such as "Go back to Korea right now!". (DE 36, Am. Compl. ¶ 34.) Plaintiff also alleged that Tilton had a negative attitude toward Plaintiff because of his sexual orientation. (*Id.* ¶ 33.) This allegedly culminated in Tilton submitting Plaintiff's paper to the plagiarism-checking program, which Plaintiff claims was a deviation from the typical procedure. (*Id.* ¶¶ 26–27.)

Plaintiff also adequately alleged that Aldrich, Shimko, and Rockman intentionally discriminated against him because of his membership in a protected class. They reviewed Plaintiff's paper and never voiced concerns about plagiarism, yet they supported Tilton's recommendation that Plaintiff be dismissed. (DE 36, Am. Compl. ¶¶ 20–21.) According to Plaintiff, Shimko even stated that "he believed that [Plaintiff] did not engage in plagiarism" but still supported the dismissal. (*Id.* ¶ 23.) Accepting Plaintiff's allegations as true, the Court finds that Plaintiff sufficiently alleged that Aldrich, Shimko, and Rockman supported Plaintiff's expulsion, at least in part, because of his race, ethnicity, sex, and/or sexual orientation. Plaintiff has alleged a violation of his equal protection rights. The Court now turns to whether this right was "clearly established."

(b) *Plaintiff's Right to Equal Protection Was Clearly Established*

Plaintiff bears the burden to show that his right to equal protection was "'clearly established' in [a] more 'particularized' sense." *Brosseau v. Haugen*, 543 U.S. 194, 199–200 (2004). "The question is whether a reasonable state actor would have known that his actions,

viewed in the light of the law at the time, were unlawful." *Nabozny v. Podlesny*, 92 F.3d 446, 456 (7th Cir. 1996) (citing *McDonald v. Haskins*, 966 F.2d 292, 293 (7th Cir. 1992)). This burden may be met by demonstrating "a clearly analogous case establishing a right to be free from the specific conduct at issue or when the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001) (citing *Saffell v. Crews*, 183 F.3d 655, 658 (7th Cir. 1999)).

The Equal Protection Clause "require[s] the state to treat each person with equal regard, as having equal worth, regardless of his or her status." *Nabozny*, 92 F.3d at 456. It forbids arbitrary discrimination on the basis of race, national origin, sex, and sexual orientation. *See id*. ("[T]he Constitution forbids intentional invidious discrimination between otherwise similarly situated persons based on one's membership in a definable minority, absent *at least* a rational basis for the discrimination.") (emphasis added). This notion is clearly established.

Consequently, Plaintiff has a right not to be arbitrarily subjected to different standards of plagiarism review than other students because of his race, national origin, sex, or sexual orientation. Professors cannot try to get a student expelled from a state school, or support the attempt to have a student expelled, when the expulsion is motivated by discriminatory animus. The Defendants should have known that they would violate Plaintiff's rights by treating him unfairly because of his group membership. Because Plaintiff has stated a claim for the violation of his equal protection rights, and this right was clearly established, Defendants do not have qualified immunity from this claim.

(c) *Plaintiff Failed to Allege Violations of His Substantive and Procedural Due Process Rights*

Plaintiff contends that Defendants violated his right to substantive due process when they treated him differently than similarly situated non-Asian, non-Korean, or female students. (*Id.* at Ct. III.) However, "[w]hen a particular amendment [like the Equal Protection Clause] provides an explicit textual source of constitutional protection against a particular source of government behavior, 'that amendment and not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Eby-Brown Co., LLC v. Wis. Dep't of Agriculture*, 295 F.3d 749, 754 (7th Cir. 2002) (citing *Alrbight v. Oliver*, 510 U.S. 266, 273 (1994)). The behavior that Plaintiff complains of—being treated differently because of his group membership—is more aptly considered an equal protection claim. Thus, Plaintiff fails to establish a violation of Plaintiff's right to substantive due process.

Plaintiff also alleges that Defendants failed to provide Plaintiff with procedural due process. (DE 36, Am. Compl. at Ct. IV.) Section 1 of the Fourteenth Amendment states "nor shall any State deprive any person of life, liberty or property without due process of law." U.S. Const. amend. XIV, § 1. When considering a procedural due process claim, the court applies a two-step inquiry: first, the court determines "whether the plaintiff has been deprived of a protected interest;" second, the court determines "what process is due." *Sonnleitner v. York*, 304 F.3d 704, 711 (7th Cir. 2002) (quoting *Townsend v. Vallas*, 256 F.3d 661, 673 (7th Cir. 2001)).

The Court finds that Plaintiff has not been deprived of a protected interest. First, Plaintiff does not have a right to a continued graduate education. *See Williams v. Wendler*, 530 F.3d 584, 589 (7th Cir. 2008) (explaining that to hold that a student has a constitutional property interest in a college education would incorrectly imply "that a student who flunked out would have a right to a trial-type hearing on whether his tests and papers were graded correctly"). In *Williams v. Wendler*, the court held that whether a student has a legitimate claim of entitlement to a college

14

education is a contractual matter. *Id*. Plaintiff has not asserted any contractual right that would establish a legitimate claim of entitlement to his continued attendance in the Ph.D. Program.

Second, Plaintiff argues that he has a protected property interest in being "treated fairly prior to his dismissal from Purdue." (DE 44, Response Br. at 16.) Even if this were a property interest, Plaintiff still fails to state a claim. Defendants recognize that Plaintiff deserved some process but contend that he received all process that was due. (*See* DE 47, Reply Br. at 13 ("In the context of university discipline proceedings," a fair hearing "implies that the person adversely affected was afforded the opportunity to respond, explain, and defend.'" (citing *Reilly v. Daly*, 666 N.E.2d 439, 444 (Ind. Ct. App. 1996))). The Court agrees.

Aldrich, Shimko, and Rockman reviewed Tilton's report. (DE 36, Am. Compl. ¶¶ 20–23.) After Plaintiff learned that he was being investigated for plagiarism, he was allowed to present evidence to the Defendants demonstrating that he was subjected to a different standard of review than other students. (*Id*. ¶ 25.) After Plaintiff was expelled, he was permitted to provide Rockman with additional evidence regarding other students' plagiarism. (*Id*. ¶ 37.) These facts establish that Plaintiff had an adequate opportunity to respond to the allegations and defend against them. For these reasons, Plaintiff fails to state a procedural due process claim.

**(3)**   *Prospective Injunctive Relief*

Plaintiff's Amended Complaint requests relief including reinstatement to the Political Science Ph.D. Program. (DE 36, Am. Compl. at Ct. IV, ¶ 4.) Defendants moved to dismiss Plaintiff's claims for prospective injunctive relief against them because they lack the authority to order reinstatement in their individual capacities. (DE 40, Mem. of P. & A. in Supp. of Partial Mot. to Dismiss at 10–11.) Plaintiff's requested relief, however, relates not only to the individual

Defendants involved in this partial motion to dismiss, but also it relates to Counts I and II of the Amended Complaint involving Defendant Purdue. Because injunctive relief may be available against at least one defendant, the Court denies Defendant's motion to dismiss the request for prospective injunctive relief.

**D.     Conclusion**

Defendant's Motion to Dismiss Counts III and IV (DE 39) is granted in part and denied in part: the motion to dismiss Count IV and the substantive due process claim in Count III is granted; the motion to dismiss the equal protection claim in Count III is denied.

SO ORDERED on April 11, 2011.

 S/ Joseph S. Van Bokkelen  
JOSEPH S. VAN BOKKELEN  
UNITED STATES DISTRICT JUDGE